Good morning. We have four matters this morning and the first is number 14-3752, InThe Matter of Search of Electronic Communications. Messrs. Weaver and Kircher and Mr. Zosmer. Good morning to the panel. I represent the appellant and along with Mr. Kircher, a counsel of the House of Representatives, I would like to reserve approximately two minutes for rebuttal and with the flexibility that Mr. Kircher, who is dealing with the speech or debate laws issue, may want to argue and rebuttal. First issue is the appealability of this matter and I wanted to point out that the motion that was filed by Congressman Smith in the court below was based on two different theories and that's important because appealability may change according to the theory. First, the motion was filed as a civil proceeding within the inherent power of the court to protect the privileges of the Congressman. I was actually curious about that. Curious about the district court's jurisdiction. Of course, the district court doesn't have jurisdiction. We don't have jurisdiction. This is started by a motion by an individual who is the target of an investigation. Well, actually, he's only been named as a subject and not a target, which I think is critical to certain parts of the issues. But the district court does have jurisdiction with certain cases that we cited to permit a party to intervene in a matter if their privileges are threatened to be violated. In this case, the privileges are three. Speech or debate clause, the attorney-client privilege, and also the attorney-work product privilege, which the district court did find that the Congressman had the sufficient interest required to intervene and permitted him to intervene. Isn't your primary argument, or one of the primary arguments, that the Perlman doctrine gives us jurisdiction? Yes, I would say two doctrines. I would say the Perlman doctrine, because in that situation, he was not subject to the order of the district court. The only party that could be subject to the order would be Google. And the district court entered a final order denying the release sought by the Congressman in this case. And therefore, based upon certain precedents of this court, he has the right to immediately appeal this matter. But the Perlman only protects use of information. It doesn't protect the disclosure, does it? Well, that's the issue on the merits of this matter, which will be addressed by Mr. Kirshner. The government tried to argue the merits in order to defeat appealability. And actually, I think those are two completely different issues. So is it the case that you say this is a Perlman doctrine case that therefore the court has jurisdiction? And also, Your Honor, under the collateral order doctrine, I believe that the speech or debate clause issue in particular is right for appeal. All right. But what if we say this is not a Perlman doctrine case? If it's not a Perlman doctrine case, then it comes under the standards or meets the standards of a collateral order doctrine. Number one, the disputed question was conclusively determined by the district court. Number two, it resolved an important issue completely separate from the merits of the case. And that issue is whether or not the speech or debate clause is a privilege of nondisclosure. It resolved that matter, and that's separate from whether or not, let's say an indictment was brought. There's been no indictment brought in this case. If an indictment was brought, the issue is guilt or innocence of the indicted person. But the speech or debate clause issue is completely separate. And finally, it's effectively unreviewable on appeal. If disclosure is permitted, and we contend that it is a privilege of nondisclosure, if disclosure is permitted, there will be no opportunity later to have that issue resolved on appeal because disclosure will have already been made. That's not really so, is it? I mean, if disclosure, if the information is disclosed and the government receives the information, let's say from an Internet service provider, you would be informed of what that information is, and you would have a right to move to suppress that information. And it could not be used in a criminal proceeding. Well, actually, we're not seeking suppression, and we didn't seek suppression pursuant to Rule 41G motion. But you're seeking to prevent the government from getting the information in the first instance. That's correct. And that's based on the United States constitutional provision. If it should turn out that there is information covered by the speech and debate clause, I think you would then move to suppress it, right? Well, for the purposes of this argument. If there were an indictment. Yeah, if there's an indictment, there is a possibility of moving to suppress at a later time. But that's not what this case is about. Right, right. This case is specifically about trying to prevent disclosure. But if you're playing chess, you think a couple of moves ahead. Now, if you look at our 41G motion, and the government somehow argued that we were moving to suppress, if you look at the 41G motion, we only asked the district court for the following relief. We asked the district court in our prayer for relief to prohibit the government from receiving privileged information, which is subject to nondisclosure. That's a motion for return of property. Yes. But they don't have the property. Well, we contend that they had the property in their constructive possession. The district court ruled that they did not have it in their constructive possession, but never held a hearing. How did they have it in their constructive possession? By virtue of you providing a privilege, Oliver, or what? Now, how they have it in that capacity is Google, at the command of the government, can push a button and send that information to the government. Now, the government voluntarily withheld from requesting the information based upon the litigation that's been going on. But essentially, ever since they served the subpoena, Google made it clear to me, and these are facts that would have been presented at a hearing, had the district court held a hearing, made it clear to me that if the government asked for it, boom, we're going to turn that information over. That is constructive possession. But you already have possession of what it is that the government is trying to get. These are e-mails. That's another fact that was assumed by the district court that was incorrect. The other thing is we're really talking about – Wait a minute. Doesn't the e-mail sender have access to his or her own e-mails? There's no proof on record about that. And the other thing is the district court assumed – But it would be kind of a leap of faith to say that a person, if you have an e-mail in your name, e-mail account, that you don't have access to that. Well, the key is the number of years involved in this. The district court made the assumption – Google made two assumptions. One, that the congressman had access to all of this information, that he still had it within his possession from 2008 to the present. They also made the assumption that when the Google employees conduct their own search to try to comply with the subpoena, that whatever they come up with is magically going to match what the congressman has maintained. Now, if the district court holds a hearing and those facts are presented, fine. But in this case, the district court didn't do that. Now, Mr. Kirchherr is going to talk about the speech or debate issues, and I thought you were going to talk about non-speech or debate issues. Is that correct? Yes. Could you turn to the attorney-client privilege and work product issues? Yes. There was no dispute below at all about those privileges. There was no dispute that they're privileges of nondisclosure. The main issue that we raised in relation to those privileges is the procedures that the court approved that the government presented to protect those privileges. That would be a filter, yeah. But that's a very common procedure, isn't it, in fact, in the attorney-client privilege and disclosure cases? All the cases that we cited, there was an approval of a procedure where a privileged attorney was on a ground floor to review the documentation and make a determination as to whether or not the documents were privileged. The procedure presented by the government on the ground floor is only an investigative agent, a non-attorney, and according to those procedures, the investigative agent has a right to review the documentation, say, well, these are privileged, these don't seem to be, and then immediately turn the second pile over to the investigation team. Is your suggestion that your client have the access to whatever it is that's being turned over first? I would say that my client should be on the ground floor, but along with a privileged Justice Department attorney, which is not the procedure that the district court approved. They say that sounds like your client would be determining what the government can use in a possible criminal prosecution. No, my client would have a right to be heard. My client would not make the sole determination. With regard to, Judge Roth had a question. Would you be, if it were a Department of Justice attorney making the attorney-client privilege and word-of-product determination originally, would you be content with that? I would say that that would be much more satisfactory than the procedures approved by the district court. That is correct. Because an attorney is the only one, the only expert that can make that determination on the ground floor. And we also would like to be, as I set forth in my papers, we would also like to participate in that procedure at some point in time. So you're saying an attorney takes the initial look, a government attorney, rather than a member of a government enforcement non-attorney? A government attorney. I thought that would be like an FBI person initially. Well, then if that person believed that that was, got past that person, then it would go to the privilege attorney, the DOJ? Yeah, but that's not the government's procedure here. If an agent looked at the documents first and said, here's what I think, I think these are privileged, these are not, and then all the documents went to a privilege attorney, that procedure would be acceptable. But in this case, if you read the government's procedures very carefully, the privilege agent says, this stack is not privileged, I'm going to immediately turn it over to the investigation agents. That's unacceptable for an agent to do that. In all of the cases cited by the district court, by the government, which we went through one by one, and in all those cases, in the cases that we've cited, a privilege attorney was on the ground floor or the court did not rule on the specific procedures. In either procedure, Mr. Weaver, your client would have the opportunity to object to the use of any of the e-mails in a prosecution? Yes, the court did have us, did approve procedures and the government did propose procedures where at some point we definitely have the right to be heard. There's no question about that. No question about that. But I thought with regard to the work product and attorney-client privilege, you were opposed to the disclosure as well as possibly the use, which is a little bit different than what we were talking about with regard to speech or debate. As far as those two privileges, the filtering procedure that they set up, keeping that information away from the investigation team, that procedure has been approved by many courts. What we were concerned about primarily was a privilege attorney not being involved at the ground floor of that particular process. That was our primary. And the district court, in its findings of fact, assumed incorrectly that that was the procedure that was proposed by the government. It's a very unique case. I was wondering because we're here primarily because of a policy that an Internet service provider has, which is a policy to notify holders of e-mail accounts that the government wants e-mails, which is Google's parent policy. I mean, if it weren't for that policy, we really wouldn't be here. I think that's correct. In fact, the government had no intention of the Congressman learning of the- Well, the government would execute a search warrant. In other words, the court would not be involved because an Internet service provider would not have notified- Yes, but fortunately we did get wind of it.  I'm sorry? They come into the office as opposed to getting the- And again, there was an opportunity for the Congressman to say, hold up, this is covered by speech and debate. I think in any arena, the Congressman or any member of Congress, because this actually involves the House as a whole and also the Senate, any opportunity they have to raise it. Fortunately, at this point, we were able to bring before this court the principle of nondisclosure. Now, we're aware of different opinions on that matter, and Mr. Kirchherr will cover that. But fortunately, at this point, the way it turned out, the government didn't intend for it to turn out this way. We had a right to raise the objection of nondisclosure and bring that before this panel. Okay. Let's hear from Mr. Kirchherr. Then we'll get you back on the line. Thank you. Good morning. If it pleases the court, Kerry Kirchherr on behalf of the Bipartisan Legal Advisory Group of the U.S. House of Representatives and Amicus Curiae. First of all, let me thank your Honor for letting me appear here today as Counsel for Amicus. I appreciate that. The Department has acknowledged that the speech or debate clause protects members of Congress against being compelled to testify about their legislative activities. The principle merits issued before you today is whether that same clause protects members against compelled disclosure of records that reflect those same legislative activities. You argue in your brief that we should follow McDade. But McDade is not an order of this court. It hasn't been approved by the full court. And aren't we ruled by the precedent in Eilberg? And to change that precedent, don't we need to go in bank? No, thanks for your Honor. And this is the reason why. The House certainly acknowledges the importance of starring decisis as a general principle. Yeah, but we have a court rule that we will not overrule the holding of a panel except when the court goes in bank. And aren't we bound by that? Is there any significant way we can distinguish Eilberg from the present case? I think what you can do, your Honor, is acknowledge that Eilberg is a flawed decision. I think what you can do ñ Well, but we can say that, but we still are bound by Eilberg. I think you can limit Eilberg to the facts of that particular case and make a decision in this case  The general rule in Eilberg was that you don't bar disclosure. You bar the evidentiary use later on of that information. And that's the general holding. That's different from what the D.C. Circuit had done. But I don't see how McDade, no matter what it says, can overrule that. I don't suggest that McDade does overrule it, your Honor. What I do suggest is that McDade suggests that three judges of this court 20 years after Eilberg was decided recognize that there were problems with that decision. All right, and we can recognize that and we can recommend that the court go in bank and decide that. But I don't think weasel words are going to give us any right to ignore Eilberg. I think you can limit Eilberg to the facts of its case and make a decision in this case that's based upon Supreme Court precedent. And I'll give you another two reasons why I think that is the case. Number one, the Supreme Court has repeatedly said that stare decisis applies less rigidly in the constitutional context than it does in the statutory interpretation context. That would certainly blow Rule 1.9 out of the water. Well, the reason for that obviously I'm sorry, go ahead. The reason for that obviously, your Honor, is that if the court makes an error in statutory interpretation, the Congress can fix it. If the court makes an error in constitutional interpretation, the Congress cannot fix that. Okay, but that's the Supreme Court. And we are a court where we can fix mistakes by the court going in bank. Well, that is one way. But let me suggest to you that the court does not have to go on bank in order to reach a reversal in this case of the district court's order. One reason is because you may take account of subsequent Supreme Court language. In 1979, in the Helstosky case, which was an appeal after all from the Third Circuit, in Helstosky v. Meader, the court made very clear, said in very clear language, in dicta to be sure, that the speech or debate clause is except passably important to the structure of our government and entitled to be treated by the courts with the sensitivity that such important values entail. Now, that was dicta to be sure, but you can recognize that. That was in 1979, post Eilberg. You can recognize that. And there are Third Circuit decisions saying that you can take account of dicta. You have to consider the practicality of your argument, because what you're saying is that you can set up speech and debate clause to prevent the execution of a search warrant, a search warrant which is designed to uncover possible evidence of criminal activity. But that's the way it should be, Your Honor, given the surpassing importance of the privilege that the speech or debate clause was designed to protect. I don't know of any case in our circuit that has said, no, you cannot execute that search warrant. I don't know. I don't know of a case in the circuit that's addressed this particular issue, Your Honor. The speech or debate clause has not come up in this context. Nationally, has a speech and debate clause issue been raised to prevent the execution of a search warrant? Not to prevent the execution, because normally nobody knows, the member would not know about the execution of a search warrant, executing a physical warrant. You know that because of Google's policy to disclose. Well, that's right. That's right. And, you know, as Mr. Weaver said, it was fortuitous for the congressman and the Constitution that that was the case. Does it make sense, though? I mean, how can you protect members of Congress from a – it's not a prosecution, it's an investigation. So this is a search warrant to uncover information that may be used. But how can you say, well, no, members of Congress are immune from that  under the speech and debate clause and totally stymie what may be a good prosecution, what may be a bad prosecution. But take into account that if you don't like what they uncover, you can always make a motion to suppress. It's the same reason, Your Honor, that they cannot question third-party witnesses about a congressman's legislative activity in pursuit of an investigation, because that's what the speech or debate clause requires. The court has been abundantly clear that the purpose of this clause, the primary purpose is to prevent intrusion into the legislative process, to prevent intimidation of the legislative process by the executive and judicial branches. What is going on here is precisely contrary to that. But what we've done is draw a line. The line being that you can't use it in evidence per the Eilber case, but you can have it disclosed and the congressperson can be involved in reviewing the documents to assert a privilege. I don't know how to get around that. It's a difference of use and disclosure. Well, I understand it's a difference of use, but what I can tell you is that missing from any discussion in the Department's brief is any constitutionally grounded explanation for that distinction. Right? There is no constitutional explanation. So you say that this thing, this privilege, trumps the need for information pursuant to a search warrant because of speech and debate? Yes, I certainly do. Well, it doesn't completely trump it. It opens what is intended to be searched for a review of whether it's covered by the speech and debate clause. And if it's not covered by speech and debate, of course, then it will be produced. Absolutely right. Nobody is making a suggestion here that all of these emails are speech or debate. It brings to mind many years ago when President Nixon, under executive privilege, sought to prevent the release of a number of tapes of conversations in the White House, and the court said no, no, this may be evidence in a criminal prosecution. You say the House has a privilege under the speech and debate clause, but it seems like if the President has to give up evidence, doesn't a member of Congress have to give up evidence? I should say evidence. I should say information. I disagree. The speech and debate clause is a different animal. It is written into the Constitution in black and white. It's an absolute privilege. It is fundamental to the structure of the government. It is not designed to protect confidential communications as such. It is designed to draw a circle around legislative activities and keep the other two branches out of that circle. That is the nature of that privilege. That is the nature of that constitutional protection. That is why it is different than executive privilege. Again, that does not mean that members are super citizens. It does not mean that they can't be prosecuted. It simply means that in doing that, the Department cannot access legislative materials and cannot use legislative materials. There have been numerous prosecutions of members in this country over the past 30 or 40 or 50 years in which the government has successfully done that without using and without accessing legislative materials. If the information becomes public, it can be used against other persons, right, who are not members of Congress. Absolutely, Your Honor. If the Department accesses publicly available legislative information, and of course there's lots of that, right, very much of what the House and the Senate does is done in the public. The House is not suggesting that the Department cannot access or use that material for investigative purposes. Do you disagree with Perlman's statement that the privilege only applies to use of speech and debate, not the disclosure? Perlman was not a speech or debate case, Your Honor. Perlman was a Supreme Court case that established that a party claiming a privilege in response to a subpoena to a third party to a third party doesn't have to wait for the third party to be held in contempt. That's this case. That is, a congressman should not have to wait for Google to be held in contempt in order to be able to get appellate review before all of you. That's the Perlman case. One question just in terms of how things work. Is it typical for a congressperson to have an e-mail account of the office that's set up for congressional matters and to have personal e-mails for personal matters? I think it's in the record here that there is an official e-mail for this congressman for his office and this is his personal account, right? Is that correct? Every member has access to an official e-mail account through the House system. Obviously, if I had my way, all of them would use that e-mail address for all their official activities. They are not obliged to. But then you wouldn't be able to come to Philadelphia. There is that. They are not obliged to use that. And some of them do use private e-mail accounts, like a Gmail account, to conduct not only their personal business and or their campaign business. It would certainly make your life easier if they followed that. Yes, and we no doubt will be having discussions spending the outcome of this case about that matter, as well as other things. But there was no obligation here. And the fact is that there are, I don't think there is any dispute in this case, that because he used his Gmail account almost exclusively, that there are going to be legislative materials and perhaps an abundance of legislative materials in those e-mails. And that's what drives the issue here. Just to clarify one thing, I had thought that McDade was a non-presidential opinion based on an order that was entered in July of 1996 by then Chief Judge Becker. But Judge Fuentes has shown me there is an opinion relating to McDade that had Judges Sirica and then Alito and Bassler earlier. Correct. Which one are you referring to? The 96 order, Your Honor. The 94 appeal was in response to the non-presidential. Okay, that's what I thought. Unfortunately. Okay. Thank you very much. Thank you very much. Good morning, Your Honors. May it please the Court, Robert Salzman on behalf of the government. As the Court can probably anticipate, my argument is Well, let me knock you off your feet right in the beginning. Please. You requested and expedited an argument in this appeal because of time constraints. If we should decide that this appeal has to go in bank, would that unbearably upset your time schedule? It depends on the schedule. If we decide we need to go in bank, what's your position on that? It depends on the schedule, Your Honor. If the end bank were six months from now, then absolutely it would be very prejudicial to the government and its investigation. I am scheduled to appear before this Court in bank on February 19th in a completely different case. To be honest, if the Court scheduled an end bank hearing that day for this case as well, it would not be as prejudicial to the government. Our next in bank sessions would be in May. That would be difficult. That would be problematic for the reasons that we set forth in moving for expediting this appeal. What is your timing? Well, the timing varies. I thought that this case was initially scheduled for early February before another panel. It was. Well, initially we moved for expediting. This appeal was filed, I think, at the beginning of October, and our preference would have been that we had expedition within a month or so. That didn't suit the Court's schedule. But at every stage we asked for expedition when it was set for oral argument in February of the Court, and we appreciate this moved it back to today. But time is of the essence. These are matters that have been under investigation for some time. There may be statutes of limitation that apply to some acts and not others. It's always a very serious concern, and it's the reason, and it's hinted at in Judge Fuente's questions, that we just don't do this. We don't have interlocutory pre-indictment, pre-search warrant appeals. There really is no such thing. And this is very unusual that we're here today at all, whether it's for a panel argument or an end bank argument or anything else. The procedure for a search warrant is that it's approved by a federal judge. The person's rights are protected by the fact that a magistrate judge must find probable cause of criminal activity. And then the person, if he becomes a defendant, has a right to move to suppress evidence. That is the system. That's what the Supreme Court said in Grubbs, and there are very, very good reasons for that. Expedition is important in any criminal investigation in this matter or any other. Well, now, if we should decide against you, well, if we should decide in favor of you, it would seem to me that this issue is going to go to the Supreme Court, and because of the circuit split with the D.C. Circuit, that the Supreme Court might very well take it. Now, can we escape all these layers of possible delay? Well, I don't think we can escape a layer of Supreme Court review. That's not up to anybody here. It's up to the appellants as to whether they would seek it, and then it's up to the Supreme Court of whether they would take a case like this at the stage that it's at. We think our position is correct. It's correct on the law. It's certainly correct based on the existing precedent of this court, and we ask this court expeditiously to affirm that. What is the precedent that supports you? Well, it's Eilberg. I mean, Eilberg resolves this case. That was going to be the first thing I was going to say. Obviously, that's future debate. We'll get to the other privileges. Actually, Your Honor, it resolves it with respect to jurisdiction as well, because the only conceivable basis for jurisdiction in a pre-indictment matter like this would be Perlman, would be a situation in which the person whose rights are affected needs to defend his rights with respect to process incision to a third party. But Perlman, as has been mentioned several times this morning, involved a used privilege. The reason the person can intervene is rather a disclosure privilege, is to stop the information from being disclosed to the government. The fact that this court has explicitly held over and over that the speech or debate privilege is not a nondisclosure privilege resolves everything. It resolves the jurisdiction as well as the merits. But what are the contours of used privilege? What does that exactly mean? Well, the Supreme Court is the government can't use it? No, well, the Supreme Court has defined it very clearly. There are three types of protection that the speech or debate clause provides. And by the way, I certainly don't denigrate the importance of speech or debate to our constitutional system of government, as might have been suggested. And there are three very important limitations that are set by the Supreme Court. One is a congressman cannot be sued or prosecuted for a legislative act. So if the act itself, the speech, debate, conduct in relation to legislation, is the subject of the suit or prosecution, it can't be held. Second, there's a testimonial privilege. The congressman cannot be compelled to testify with respect to legislative acts. And finally is the use privilege, which is that the legislative act itself cannot be used in the course of a prosecution or suit against the congressman. Now, there are a couple of key limitations there. It's the third one that we're dealing with. It is. And the key things that we see right away is, one, we're dealing only with legislative acts. And that is where the Supreme Court has very carefully drawn the lines. They have means in relation to the consideration or enactment of legislation. And there are many acts that congressmen do that the Supreme Court has held that are outside the scope of legislative acts. The other thing we see is that this is not an immunity from prosecution. It's not an immunity from process. The congressmen are not, as the Supreme Court said, super citizens as a result of the speech or debate clause. This is a very carefully defined clause to protect the independence of the congressional branch of government. And so what this court said in Auerberg, it really is correct, besides the fact that it's controlling, which is that the testimonial privilege prevents the harassment of individual members. But it's not necessary to have a complete nondisclosure privilege. Two reasons for that, two very important points. One is speech or debate at its core is public. It's about public material. That's where this becomes very different from the attorney-client privilege and other nondisclosure privileges. The core of the clause are speeches and debates that take place in public in Congress. Of course, we're talking about a period when the clause was part of the Constitution a couple hundred years ago. And now we have e-mail. It also covers acts to and from going to Congress. Yeah, Internet service providers. And the congressman here says he uses e-mail for speech and debate type conversations, including votes that are coming up, et cetera. Well, he does. But correspondence was ubiquitous even at the time of the enactment of the clause. And, in fact, I'm actually thinking of that because I'm listening to an audio book now that takes place during the Roosevelt administration and what struck me is the author is referring constantly to letters. And we actually have more correspondence from that era because people wrote letters. They actually had to correspond with each other when they were in different cities as opposed to picking up the phone and having a quick conversation. So, in some respects, we have a greater wealth of material. That doesn't change the constitutional analysis. It protects speeches or debates. I'm not saying there's not private communication as well because there is, but that's our first hint that this is not your normal nondisclosure privilege. The second very important thing is that the privilege belongs only to the member, meaning speech or debate material involving legislative acts themselves may be used against the third party. And so it would be, as the district court here itself said, it would be bizarre if the government cannot get access to this material to determine whether third parties who may be attempting to corrupt the Congress of the United States are engaged in criminal activity. What did the privilege log say here? Did it list X as a legislative act? I don't think there's a privilege log. No, we don't have a privilege log. What we do have that's very interesting, Your Honor, is that we did issue a subpoena almost a year earlier to the congressman for that material. There was a privilege log provided. And the compliance has been dilatory, to put it mildly, and it shows the problem, as the district court said, when you're essentially allowing a congressman to investigate himself or herself. He wants to be the one to decide what to hand over and not let us ever see anything else, whether it can be used against third parties or not. The nondisclosure privilege that's being suggested here is a roadmap for corrupt activity. The discussion would take place in e-mail. The cash may be handed. I'm not saying that happened in this case. I'm using a completely hypothetical example. But if somebody wanted to hand cash to somebody but then send an e-mail. Well, Mr. Jefferson is a good example. Congressman Jefferson is a good example in that he was convicted. He made good use of a refrigerator. Yeah. It's frozen money. So if someone wants to hand over the frozen money, fine. But then they send an e-mail and say, here is the legislation that you need to approve. Or maybe he says, these are the bills you passed last year for me. Here's the list for this year. And the government, the prosecution arm, will never see that. That just can't be. And it's inconsistent with all the Supreme Court precedent that Mr. Kirchherr refers to that says that members of Congress are not super citizens and they are not immune from prosecution. Let me just switch a little bit here. You had a subpoena that there has been a tussle over. And you then, ex parte, went and tried to get a search warrant. In fact, one was issued. Then Google told the other side. Why did you not play out the subpoena before you attempted to get a search warrant? Well, we actually are playing that out as well. And we will be moving for compulsion in the district court. But the reason, Your Honor, is as the appellants have mentioned, the request for e-mail goes back to 2008. That's now based on evidence that's been gathered in the investigation that shows that e-mails that old may be relevant. And the magistrate judge has approved that. And the district judge has said that he sees probable cause as well. There we should not have any confidence that he himself still has every e-mail dating back to 2008, as he says. Now, their concern, well, we don't have it. How can they create a privilege argument? And the answer is we're happy to give them a copy. I mean, once the production is made by Google, if there's further litigation regarding this, they can have the same database that we get. But that's the answer to your question, is that to assure that we have a complete set, once we realized what the evidence was and the scope of what we're looking at, it was necessary to issue the search warrant. And the judges agreed. What is the gravamen of your argument? Is it that this court lacks jurisdiction? Well, this court does lack jurisdiction. The Henry Grant jury, the 2011 decision, is directly on point, saying that you can't have an appeal of a 41G ruling that takes place, that's interoperatory. I mean, doesn't McDade say that we have jurisdiction over orders related to speech and memory? Only with respect to, not just McDade, but Helstowski and the Supreme Court. There's been a very clear distinction between speech or debate arguments that seek to dismiss an indictment altogether. That goes to the privilege against prosecution that I spoke of earlier. So if a defendant now, a congressman defendant, moves to dismiss an indictment, alleging that he's being indicted for legislative acts, that may be the subject of an interlocutory appeal. That's what Helstowski says. That's what McDade confirmed. There's a difference where you're moving to suppress evidence. You're not trying to stop the prosecution. But simply saying particular legislative acts can't be introduced against me. And actually, Your Honor mentioned at the end of my friend's argument, the earlier McDade decision, not the one they're relying on, the published McDade decision, which is binding, confirms that split that I'm talking about. It exercises jurisdiction with regard to the motion to dismiss the indictment and says it won't consider evidentiary rulings that may come up on the basis of speech or debate. So you're saying that the petitioners are one step too early? They're several steps too early. If there ever is an indictment, and there's no saying that there will be here, we're just conducting an investigation. But if there is an indictment, then if they think they're being indicted for legislative acts, if it's a congressman, then they can move to dismiss the indictment and maybe get an interlocutory review. But at the same time, isn't it if the executive branch wants to really mess up Congress, they can do then all sorts of investigation that will get information out that may be embarrassing, et cetera, et cetera, and there's no step that the members of Congress can take to say, hold on, wait, this is covered by the speech and debate clause. Well, the very important limitation, Your Honor, in this instance, is it's a search warrant which requires the approval of a federal judge. The executive cannot just decide to make a mischief. And if it issues a subpoena instead of a search warrant because it feels it can get the information that way, the rules clearly provide a motion to quash in that instance if there were a nondisclosure privilege, which there's not. So I don't think that potential for mischief really exists. Could there be a scenario in which the executive has decided to so intrude into the halls of Congress that separation of powers has to present some limit? Certainly, I'm not here to argue that. But that's not this case. This case is about a lawful search warrant issued to a third-party holder of records with regard to a privilege that's not a nondisclosure privilege. If we get materials that are legislative acts, there is plenty of protection for the congressman down the road in order to prevent us from using it against him or prevent us from indicting him. We'll get to that. Right now you're giving a speech or debate. But I still want to see if I understand the facts here. I thought last February you issued a subpoena. And they provided to you a privilege log with respect to documents pertaining to that subpoena and that you never filed any type of motion to deal with those objections. Or is that in process right now? That's in process right now. I believe it may actually have been filed within the last few days. There's been a lot of conversation that's gone up to that point to try to get compliance. The congressman has not only asserted speech or debate, but asserted relevance and over-breath. Again, it all gets to this theme of trying to investigate yourself, of telling the government what's wrong. And with regard to the speech or debate, assuming you get them pursuant to Eilberg, what's the process that's set up internally for that review to take place? What's the filtering process right now? With regard to speech or debate, the district court has set a filtering process saying that It keeps saying it suggests strongly a filtering process. We don't read it that way. I know that's how my friend Mr. Weaver read it. We read the order as being this is what you're going to do to be fully protective. But if you have a problem with it, come back and talk to me about it. We do have a problem with it, again, based on Eilberg. Eilberg explicitly lays out the process. And the process is that the U.S. attorney does get all the information, and the burden is on the appellant or the congressman to come forward with a privilege argument to the district court, which will then consider it. But because Eilberg says this is not a nondisclosure privilege, this happens in the open. So what would happen in your view? You get all the information that you're requesting, all the e-mails, and then you would share all of those e-mails with the target of the investigation, with the congressman? And they would object or not? Sure. There's no reason not to do that. Now, I will say – Well, you've got attorney-client privilege, too. Which is different. There will be an initial filter to look for attorney-client privilege. Do you have any objection to that initial filter beginning with an attorney as opposed to an agent? We don't, other than as a matter of just expediency, that it's a process that we've used many times without problems, exactly the procedure that the district court ordered here and that we suggested. We've never had a problem with an experienced agent being able to look at a record and see whether it's an attorney sending it or not or whether it's being sent back or forth. So it's not that we're really standing on principle, other than we don't see any real reason to do it the way the other side has suggested. But there will be some type of filter review for attorney-client privilege. In this type of situation, turning to the other privileges, attorney-client and work-product, why not have a special master appointed or see if you can get a magistrate judge involved? The appearance doesn't look good to say that you're going to have an FBI agent looking at it and then a Department of Justice attorney looking at it, and then it looks like it's still the executive branch advising the executive branch. I think that would be quite extraordinary and not necessary. The government understands its obligations. We will comply with the law as set by this court. We've done that. And we don't think that there should ever be the kind of delay that would take place in a criminal investigation that would be if you interpose a magistrate or a special master. There's no precedent for that, and we don't believe it's necessary. But you know what the perception is better than I do. I mean, you look at the Stevens case as to what happened and boxes weren't looked at, and it turns out there was exonerating material in there, and you really want to be absolutely sure. But the appearance that the public has is that, hey, this is like the fox guarding the hen house. I just don't agree with that, Your Honor. There certainly have been cases. I'm not saying you don't agree. I'm telling you it doesn't make a difference what you think. It's what the public thinks. I understand. But the public, I think, would recognize that while mistakes are made in individual cases, and you've cited one in which mistakes are made, generally government officials act in an appropriate way. There's a presumption under the law that they do. We know our obligations. We understand what privileges are, and we understand the opinions of this court. And I'd say by and large we do a pretty effective lawful job of successfully prosecuting those we believe should be prosecuted. So I don't think it's appropriate to look at a couple instances where things went off the rails. But what I'm talking about is something that goes back to Confucius, which is the perception of reality is more important than reality itself. And the perception is that if you're going to have people look at this, it should be a completely independent party. Well, perhaps, Your Honor, I disagree with the perception. I think in this district in particular, we've had a very successful record of lawfully prosecuting political corruption where it's appropriate. I and the members of this court have been involved in many of those matters over the years, and I don't think that we have that kind of problem to address. There will be complete judicial review of anything that happens. Should we decide to go forward with the case, we will make the initial decision, as is appropriate, whether to prosecute and what evidence to use. But courts up to this court and beyond will examine every step of the way. At what point does the congressperson become involved in the filtering process? Well, according to – well, let's break it down. With regard to attorney-client privilege. With regard to attorney-client privilege, each side can submit a privilege log to the court and ask the court to review the documents. The government will do that initially. Again, he has or will have access to all of the material. If he thinks something is missed, he can add it to the list. And then there will be litigation in which both parties are represented in front of the court. Let me ask you another question. Taking Jefferson and a hypothetical that might be based on Jefferson, the Jefferson – and an email that you suggested, this is the list of bills that you're going to vote for in this year as we agreed at our meeting. And at the meeting there was a nice block of money presented to the congressman. Now, the email itself talking about bills that you would support, is that speech or debate covered or because there's an allegation of bribery, does an illegal act take it out of speech and debate? No, the email by itself does not take it out of speech or debate. Where this comes up even more pointedly, if I may, Your Honor, is where a congressman – and again, this has nothing to do with this case – but if a congressman is paid to vote a certain way and he shows up on the House floor and he takes that vote, as clear a legislative act as you could have, the vote itself cannot be introduced in evidence. That's the gravamen of the Supreme Court cases. But what the Supreme Court says is anything else is fair game. The preliminary correspondence that you are going to arrive and vote against this bill on such and such a day, that would be admissible? That would be admissible because the court has also held that a future – a discussion regarding a future act is not a legislative act itself. And so that may be, depending on the wording, would be admissible. So there are limitations. What's the citation for a future act? Well, Gravel and Brewster are the Supreme Court cases that get into the details of this. So there is a limitation, but again, a very carefully defined limitation by the Supreme Court that still allows the investigation. And the most important thing that Gravel says is this is not an immunity from process. So the government can investigate, and that's why this court has consistently and faithfully held that it's a nondisclosure privilege, especially with regard to third parties. Rayburn is the only case – it's the only case ever, anywhere – that has found, building on some other D.C. Circuit cases, that has found a nondisclosure privilege. Renzi in the Ninth Circuit, involving the prosecution of a congressman, thoroughly rejected it in the opinion that we commend to this court's review as well. Just a couple last points. Can I just ask one question with regard to when you submitted the affidavit to the magistrate judge seeking the search warrant, did you ask for permission to use a filter team or did you note that a filter team would be used to review the documents that you would obtain? We did. We noted the filter team with regard to the attorney-client privilege, which is the standard procedure that we use. The last points I'll make, if I may. First, that McDade order, besides the fact that it can't, as we all know, supplant third circuit precedent, is really completely distinguishable. We didn't spend much time on that in our brief. It was done on a very expedited basis. Well, not just that, Your Honor. Judge Diamond did this very well in the district court opinion, and since it's been mentioned here, I'll just take 30 seconds, if I may. That was a trial subpoena, not a grand jury subpoena, and the district court had already ruled that the records that were being requested from the congressional committee were covered by speech or debate. So what you had there was a trial subpoena for a congressman on trial to get records that the district court had already said were speech or debate and the government didn't contest that. So when you look at the order in that context, it makes perfect sense. The third circuit Chief Judge Becker says, at this time there is no reason for disclosure. The government has no lawful use of what they're asking for. Here it's completely different. Grand jury subpoena, pending investigation. We don't know if it's legislative acts or not. We have third parties who are under investigation as well, and so it's just not controlling in the least. What is, Mr. Crutcher said we should limit Albert to its facts. Fine. These are the facts of Albert. Albert is a grand jury subpoena for telephone records, the e-mail of his day being held by the congressional clerk. It's the exact same case and the exact same result that Albert prescribed. The last thing I want to mention is Google filed an amicus brief. They're not represented here, but when I was studying it, getting ready for this, I noticed something interesting which I should add, which is they tried to rely on the Electronic Communications Protection Act, which is 18 U.S.C. Section 2703, that lays out exactly how the government can get e-mail from an Internet service provider. And what was really interesting when you look at the Act at Sections 2703 and 2704 is that Congress, now this is Congress, the same House of Representatives that here is resisting the process towards its own member, but Congress laid out the different ways in which the government can get e-mails. You can use a search warrant, you can use a court order, or you can use a subpoena. And they talk about these very specifically for different scenarios. A search warrant is mandatory if the e-mail is 180 days or less or can be used in the government's discretion afterwards. 2704 is a really interesting statute. It lays out the process that then happens if somebody wants to challenge it. It allows a motion to quash, it allows litigation, it allows a copy to be given to the person whose material is taken and to be preserved by the provider, and it explicitly is limited to the court orders and subpoenas, meaning Congress understood in this context like any other, a search warrant is a unique method for quickly obtaining information without prejudicing its availability. Does this change, this statute change the DOJ guidelines on the methods for obtaining documents held by third parties? It does not. In fact, this involves that these are the third parties, which are the Internet service providers that hold the material. When I have those documents, normally it says, generally when documentary materials are held by a disinterested third party, a subpoena, administrative summons, or governmental request would be an effective alternative to the use of a search warrant and would be considerably less intrusive. The purpose of the guidelines is to assure that federal officers and employees do not use search and seizure to obtain documentary materials in the possession of disinterested third parties unless reliance on alternative means would substantially jeopardize their availability or usefulness. And that's exactly what we did here, Your Honor. We tried to proceed first by subpoena directly to the congressman. That was not successful, as I've explained. Well, but it sounds like that process by your own admission hasn't played out. That's what my concern is. Well, what we really wanted to do, Your Honor, was act with expedition in this investigation. If there ever is a conclusion, whether a charge or no charge, if it happens in March or April of this year, we would have preferred that it happened last summer. We're never in this in order to delay things as long as we want. By June, yes, we were impatient. By June, there had been four months of delay and a lack of cooperation, and a search warrant was appropriate, even under those guidelines, which of course are not binding on the court. The very last thing that Section 2704 says that's so interesting is that even though it only allows a motion to quash for a court order or a subpoena, not for a search warrant, it then says that the ruling on the motion to quash is not appealable. So even there, Congress is recognizing the need for expedition in a criminal investigation. So even that can't be appealed. Certainly here, where we have a pre-indictment effort to stop the execution of a search warrant, this is all wrong. It's inconsistent with all legal precedent, and the district court appropriately did not permit the motion to quash. Just a final question on timing. So how soon do you need a decision from us? I always hesitate to say that. Is there a grand jury disbanding at some point? No, the grand jury is sitting. If a decision were within a matter of months, it would not foreclose any prosecution the government decided to bring. We would prefer the sooner the better, within a month, or if that's possible on the court's schedule. But I don't want to presume to. If we do run into a specific problem, I would like leave to notify the court, send a letter, and we'll send a letter to the opposing side. But right now, I would say we're looking at a matter of months and hopefully not longer. Okay, thank you. Thank you very much. Mr. Weaver. Panel, please, since most of the questions have resolved, speech or debate, I would defer to Mr. Kershaw. Just one question for you. The subpoena was issued last February. You submitted a privilege law when to the subpoena. Our response to the subpoena was periodic, but I think the privilege law was submitted in June or July. And so it sounds like you're in the process of trying to get objections worked out before the court, right? Are the governors trying to get objections worked out before the court now, or what? Actually, what happened, we did supply documents. We did supply some e-mails. We wanted the court to be aware of that. We objected to others. The ones we objected to, we put on a privilege law. I invited the government specifically where we felt that the subpoena was overly broad and would encompass non-relevant information to narrow their request. I hadn't heard any response from the government on that until, quite frankly, a motion was e-mailed to me on Friday. And for this argument, I haven't read it thoroughly, but I think it is a motion to compel. It came from Mr. Gibson, who is one of the prosecuting attorneys. Okay. Very good. Thank you, Mr. Percival. Thank you, Your Honor. I'll be brief. I know you've got other cases to hear today. Several points, I'll just run through them quickly. Mr. Zosmer said that McDade was distinguishable. It is not. His argument was that the government there did not contest, that the prosecution did not contest that the documents were speech or debate. They did, in fact, contest that. It's in the record in the lower court. We cited it in our brief. He refers to Rayburn being the only nondisclosure case. We need to be clear on what nondisclosure means. Nondisclosure simply means speech or debate clause applies to records as well as testimony. And there are many cases beyond Rayburn, many in the District of Columbia, obviously, because that's where Congress operates, but many courts in other parts of the country as well. And I'm quite prepared to put several of those on the record if you like. Otherwise, I can submit something later. But there are cases from numerous circuits around the country. But didn't McDade implicate the testimonial strand of the privilege more than anything else? McDade? The order of McDade in July. I don't think so, Your Honor. It was a subpoena to the House Ethics Committee for its records. There was no subpoena to require testimony from the House Ethics Committee. It was a document subpoena. The Department contested that those House Ethics Committee records were protected by the clause. The lower court agreed that they were, but on the strength of Eilberg, nevertheless, directed them to be produced. But this was at the time of trial, was it not, as opposed to pre-indictment? This was at the time of trial. But in terms of Eilberg's limitation of the speech or debate clause to testimony and not records, the case is not distinguishable on that issue. In terms of future acts, I believe Mr. Zausman mentioned to you the Brewster case and Gravel. It's actually Helstosky, not Gravel. So if you want to look at the issue about future legislative acts, promises of future legislative acts, that thing, it's Brewster and Helstosky that contain that language. Mr. Zausman mentioned the review by the magistrate at the time a search warrant is issued. That's absolutely true. But that really goes to a Fourth Amendment issue that has nothing to do with speech or debate. The magistrate is simply not in a position to make any judgments about speech or debate. So magistrate review in the search warrant context is neither here nor there as far as the speech or debate clause is concerned. But that is not magistrate review in that context important as to whether the search warrant is based upon the probability of criminal acts being investigated. Well, that's right, Your Honor. But my point is there is no protection in that process for the constitutionally based speech or debate protections. That's my point, as opposed to some protection for Fourth Amendment rights and that sort of thing. Mr. Zausman made the point that very much of speech or debate is public. That is certainly true, but that does not explain why there should be a difference, a constitutional difference between compelled testimony and compelled records. They have full access to whatever is public. But that is a wholly different issue than whether you can compel members to produce records of their legislative acts. If I can give you one simple example, suppose that a member writes an e-mail to his staff explaining his motivation for voting on a particular bill in a particular way. According to the department, that e-mail is discoverable. But he cannot be compelled to testify about those motivations in court or in a deposition. Exactly the same motivation, exactly the same issue, exactly the same communication. One purports to be protected and the other purports not to be. That is not a constitutionally sound distinction. But in looking at the historical development of the privilege in England and the concerns that the drawers of the Constitution had, English legislators were being put in jail for legislative acts in Parliament for voting for bills, for discussing bills that the king found offensive. And there was no limitation discussed, to my understanding, about opposition to what was being said. It was simply that there can be no prosecution, that this information can be out there, that the government can be affronted by the information, that the government can know about the information, but the government cannot prosecute or imprison the Member of Parliament for having that position. Well, there's no question, Your Honor, that the Speech or Debate Clause originated in the criminal context in Tudor and Stuart England. And the principal concern was that members of the House of Commons were being tossed in the clink when they disagreed with the king. There's no question that was its origins. But when it made its way into the English Bill of Rights in 1689 and from there into our Constitution in 1787, it clearly was much broader than that. It referred to questioning in any other place. Cravel made very clear, as clear as could be, that it prevents testimony, all compelled testimony, that sort of questioning. And the real question is, today, is there any constitutional distinction, given where we are and how we conduct our legislative business, which is by oceans of paper and by e-mails and other sorts of written communications, is there any constitutional distinction between compelled testimony and compelled production of records that reflect the very same legislative activities? Does that make any sense as a constitutional matter? So it's your point that there's no distinction between use and debate as regards the Speech and Debate Clause? I mean, use and disclosure? No, use is a different protection, Your Honor. The House's view of the use protection is that if the Department obtains legislative material properly, either voluntarily, and from time to time the House participates with the Department in providing information, legislative in nature that would otherwise be protection, but voluntarily provides it to the Department to assist it in a prosecution of third parties. So if the Department gets legislative materials voluntarily, if it gets public legislative materials, if it gets it from some other source that is not, or a congressman does not raise an objection, let's say, or waives the privilege, and they get material that way, as in the Duke Cunningham case several years ago where he waived the privilege and turned over legislative materials, they're free to do what they want with it at the investigative stage. Non-use is a separate protection. What that protects against is the evidentiary use of that material against a member in a grand jury or in a trial. Now, speech or debate, you gave the easy example. Congressman does a memo to staff, here's why I voted on X, and the government wants to investigate that. What if it's more nuanced than that? The congressperson is asked to appear at a fundraiser in connection with something that's been given to that congressperson or hire an individual on the staff. To what extent are you saying speech or debate applies to that non-quote speech or debate, taking literally context? Well, your examples I would think not. I mean, appearing at a fundraiser is not a particularly legislative activity. Hiring is generally not deemed to be a legislative activity as such. So the question in every instance is, as to a particular document or a particular line of questioning, the question is, what is being sought? And is what is being sought legislative? I will not stand here and tell you that everything members of congress do is legislative. It is not. There's a lot of representation of constituent matters. There's a lot of advocacy before executive branches. There are political matters. There are speeches. There are newsletters. That all falls outside the legislative sphere. All of that is unprotected as an initial matter. So you don't even get into the question of whether there's a motion to quash or a motion to withhold. But where the material is legislative, and I don't think there's any question here that some of the emails and some of the materials in the congressman's Google account are going to be legislative by virtue of his extensive use of that. Some of that stuff is going to be legislative. And if it is, it is protected. Thank you very much. Thank you for all counsel for very well presented arguments. We'll take the matter under advisement. And I would ask counsel if you would get together with the clerk's office and have a transcript prepared of this oral argument and to half picked up by the government, half by your side, Mr. Weaver. Thank you.